IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRENCE BUEHLER, ) | |
| ) | |
| Plaintiff, ) | Case No. 09 C 1396 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| S & G ENTERPRISES INC. d/b/a RSVP ) | |
| SOIREE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Terrence Buehler ("Buehler") brought suit against Defendant S & G Enterprises, Inc. ("S & G") asserting breach of contract (Count I) and violations of the Texas Uniform Commercial Code (Count II). S & G now moves this Court to dismiss Buehler's claims pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, or in the alternative, to transfer the instant action to the United States District Court for the Northern District of Texas–Dallas Division. For the reasons stated below, S & G's Motion to Dismiss for Lack of Personal Jurisdiction is denied and its Motion to Transfer Venue is granted.

**STATEMENT OF FACTS/PROCEDURAL HISTORY**

S & G, a table top party rental company, is a corporation organized under the laws of the state of Texas with its principal place of business in Dallas, Texas. Amend. Compl. at ¶ 3. S & G has two principals, Steven Servin ("Servin") and Gary Buehler ("Gary"). Def. Mtn. to Dismiss Ex.

A at ¶ 2.[1]  Plaintiff Terrence Buehler ("Buehler") is Gary's older brother and a citizen of the State of Illinois.  Def. Mtn. to Dismiss Ex. A at ¶ 2.  In August of 2007, S & G Enterprises, through Gary, approached Buehler requesting a loan in the amount of $100,000.  Gary Buehler Dec. Ex. A at ¶¶ 8-10; Terrence Buehler Dec. Ex. B at ¶¶ 3-5.  Buehler agreed to loan S & G the money provided that the loan would bear interest at the rate of 8% per year and that the principal and all accrued interest would be immediately payable upon demand.  Amend. Compl. at ¶ 8.  S & G accepted the offer and on September 1, 2007, S & G and Buehler executed a demand promissory note memorializing their agreement.  Amend. Compl. at ¶ 10; Compl. Ex. A.  The Demand Note was signed by Buehler, on behalf of the Lender, and by Gary, on behalf of the borrower.  Amend. Compl. Ex. A.  Buehler performed his obligations under the agreement by loaning S & G $100,000, and S & G paid Buehler $4,000 in accrued interest between September 1, 2007, and March 1, 2008; however, S & G has not paid any accrued interest since March 1, 2008, and has not repaid any of the loan's principal.  Amend. Compl. at ¶¶ 13-16.  Eventually, on December 31, 2008, Buehler demanded repayment of the loan principal and all accrued interest to date.  Amend. Compl. at ¶ 17.  S & G, however, has not repaid Buehler any of the amounts that he demanded pursuant to their agreement.  Amend. Compl. at ¶¶ 19-20.

S & G is not now, and has never been, qualified or registered to do business in Illinois, has never owned, operated, or managed any property in the State of Illinois, and has never provided rentals for any events in Illinois.  Servin Dec., Ex. A to Motion to Dismiss at ¶¶ 4-5.  Additionally, S & G has no operations or customers in Illinois and does not maintain any bank accounts in Illinois.

---

[1] In deciding a motion to dismiss for lack of personal jurisdiction, the court may consider evidence outside of the pleadings, including affidavits from the parties.  *See Flag Co. v. Maynard*, 376 F.Supp.2d. 849, 852 (N.D. Ill. 2005).

Servin Dec. Ex. A to Motion to Dismiss at ¶ 7.

On January 23, 2009, Buehler filed suit in the Circuit Court of Cook County against S & G and Servin, in his individual capacity, alleging breach of contract and conversion. On March 5, 2009, S & G and Servin removed the suit to federal court based on diversity jurisdiction. On March 10, 2009, S & G and Servin filed a Motion to Dismiss for Lack of Personal Jurisdiction and a Motion to Transfer Venue. On March 11, 2009, Buehler filed an Amended Complaint which dropped all claims against Servin in his individual capacity. In response, S & G filed a new Motion to Dismiss, and it has requested that the Court apply its old Motion to Transfer to Buehler's Amended Complaint. *See* Def. Supplement to Motion to Transfer [D.E. 20].

**I. Motion to Dismiss[2]**

In reviewing a motion to dismiss for lack of personal jurisdiction, the Court accepts all well-pleaded factual allegations in the complaint as true unless controverted by the defendant's affidavits. *See Turncock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987), *superceded on other grounds*. Where

---

[2] As an initial matter, S & G's filed a Motion for Leave to Conduct Expedited Discovery on Personal Jurisdiction Issues. *See* [D.E. 33]. S & G claims that discovery is warranted to verify information contained in several sworn affidavits that Buehler submitted in response to S & G's Motion to Dismiss for Lack of Personal Jurisdiction. Specifically, Buehler submitted an affidavit from himself and his brother Gary stating, among other things, that the Demand Note entered into by S & G and Buehler was sent from Texas to Illinois where it was signed last by Buehler. S & G claims that it is unclear that the Demand Note was sent from Texas to Illinois for execution as alleged by Buehler, and that Buehler's signature on the Demand Note may not be authentic. S & G asserts that Buehler's failure to prove these assertions, beyond submitting sworn affidavits to support them, warrants limited discovery on the issue.
  Whether the Demand Note was signed last in Illinois by Buehler, however, is not dispositive of the issue of personal jurisdiction; S & G's Motion to Dismiss can be decided without this fact, it is not material to the outcome. Because discovery on this issue would not aid the Court's jurisdictional analysis, S & G's Motion for Leave to Conduct Expedited Discovery on Personal Jurisdiction Issues is denied. *See Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005) ("discovery is properly denied in connection with a motion to dismiss on jurisdictional grounds when the court does not see what facts additional discovery could produce that would affect its jurisdictional analysis."); *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (same); *Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159 (Table), 2000 WL 1909678, at *3 (7th Cir. 2000) (citing *Chaudhry v. Mobile Oil Corp.*, 186 F.3d 502, 505 (4th Cir. 1999) (district court did not abuse its discretion in denying discovery where allegations at issue were not determinative of personal jurisdiction)).

affidavits submitted by the plaintiff create a factual dispute, all disputed facts are construed in the plaintiff's favor. *See Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996).

Once a defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). When a court decides a motion solely on the written submissions, the plaintiff bears the burden to establish a *prima facie* case that jurisdiction may be exercised. *See Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Court first reviews whether statutory grounds exist for personal jurisdiction and then determines if the exercise of jurisdiction would be consistent with state and federal constitutional law. *See Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). A federal court sitting in diversity has personal jurisdiction over a defendant only if the courts of the state in which it sits would have personal jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).

"A federal court borrowing a state jurisdictional statute may acquire personal jurisdiction only to the extent that the state law authorizes service of process." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The Illinois long-arm statute governs service of process in Illinois and "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States constitutions." *See* 735 ILCS 5/2-209(c); *Hyatt*, 302 F.3d at 714. Due process requirements for jurisdiction under the Illinois Constitution parallel due process requirements for jurisdiction under the federal Constitution; therefore, the inquiry collapses into whether the exercise of jurisdiction over S & G would comport with the due process requirements of the federal Constitution. *See Central States*, 230 F.3d at 940; *accord Hyatt*, 302 F.3d at 714-16.

4

To satisfy the requirements of due process, a defendant must have "minimum contacts" with Illinois and those minimum contacts must not offend "traditional notions of fair play and substantial justice." *See RAR*, 107 F.3d at 1275, *discussing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There exist two types of jurisdiction: "general" and "specific." *See Hyatt*, 302 F.3d at 713, *discussing Helicopteros Nationales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). "General jurisdiction is proper only when the defendant has 'continuous and systematic' contacts with the state in question; if such contacts exist, the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt*, 3102 F.3d at 713. Specific jurisdiction allows the Court to exercise jurisdiction over a defendant whose contacts with the forum state are limited, but "the plaintiff's cause of action must arise out of or be related to these minimum contacts that sufficiently comport with fairness and justice." *Central States*, 230 F.3d at 943.

Here, Buehler concedes that S & G is not subject to this Court's general jurisdiction but argues that the Court has specific personal jurisdiction over S & G. *See* Pl. Resp. Br. to Def's Mtn. To Dismiss and Transfer Venue [D.E. 28] at n. 5. In determining whether specific jurisdiction exists over an out-of-state defendant, the Court must determine whether the minimum contacts between the defendant and the forum state demonstrate that the defendant "purposefully availed itself of the privilege of conducting activities" in the forum state such that it should reasonably anticipate being haled into court there." *See RAR*, 107 F.3d at 1277. The Court focuses on "the relationship among the defendant, the forum, and the litigation." *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990).

The main factor in the minimum contacts analysis is not physical presence in the forum state

5

but rather "foreseeability." *Heritage House*, 906 F.2d at 283-84. An out-of-state party's contract with an Illinois resident is alone not sufficient to establish the requisite minimum contacts. *See RAR*, 107 F.3d at 1277. Instead, the Court must look to several other factors including who initiated the transaction, where the negotiations were conducted, where the parties executed the contract, and where the defendant would have performed the contract. *See Ameritech Servs., Inc. v. SCA Promotions, Inc.*, No. 99 C 4160, 2000 WL 283098, at *3 (N.D. Ill. Mar. 6, 2000) (Moran, J.).

In *Mors v. Williams*, a case remarkably similar to this one, the court found that the defendant was subject to personal jurisdiction in Illinois when he borrowed funds from an Illinois citizen. 791 F.Supp. 739, 742 (N.D. Ill. 1992). In *Mors*, the out-of-state defendant initiated contact with the Illinois plaintiff when he telephoned him to request a loan for $100,000. *See id*. The plaintiff made the loan from his bank in Illinois, and the defendant mailed his payments to the plaintiff in Illinois. *See id*. Based on these contacts, the court held that the defendant "knew, or should have known, that if he failed to make the requisite payments, he could be subject to litigation in Illinois." *Id*.

Here, like the defendant in *Mors*, S & G purposefully availed itself of a business relationship with Buehler, an Illinois citizen, by reaching out to Buehler to solicit $100,000. It is undisputed that S & G approached Buehler to seek financing and enter into the Demand Note. *See* G. Buehler Dec. at ¶¶ 7-12; T. Buehler Dec. at ¶ 3-5; *see also RAR*, 107 F.3d at 1275 (court takes as true facts contained in plaintiff's affidavit that remain unrefuted by the defendant). Additionally, the Demand Note at issue created a continuing relationship and obligation between S & G and Buehler. These facts alone are sufficient to support a finding that S & G purposely availed itself of the privilege of conducting business in Illinois, and therefore is subject to personal jurisdiction in Illinois. *See Heritage House*, 906 F.2d at 284 (because defendant knowingly has reached out to an Illinois

6

corporation and created a continuing relationship or obligation, it is subject to the jurisdiction of the Illinois courts); *see also Mors*, 791 F.Supp. at 742.

Additionally, with respect to performance, S & G's loan payments were to be made to Buehler in Illinois which further supports the Court's exercise of personal jurisdiction over S & G. *See Mors*, 791 F.Supp. at 742 (finding personal jurisdiction over non-resident defendants where they initiated contact with Illinois plaintiff and agreed to make loan payments in Illinois); *Continental Bank N.A. v. Everett*, 742 F.Supp. 508, 512 (N.D. Ill. 1990) (same); *Lyons Savings and Loan Association v. Geode Inc.*, 626 F.Supp. 1141, 1143-44 (N.D. Ill. 1986) (same). Furthermore, the Demand Note clearly specified that Buehler was the source of the money being provided to S & G, and S & G knew that Buehler and his funds were located in Illinois. Therefore, it is unreasonable for S & G to expect not to be sued in Illinois. *See Gordon v. Vitalis Partners, LLC*, No. 07 C 6807, 2008 WL 489359, at *3 (N.D. Ill. Feb. 20, 2008) (Kocoras, J.). Lastly, it is irrelevant that S & G may have initiated contact with Buehler by telephone or by means other than physically traveling to Illinois. *See Heritage House*, 906 F.3d at 283 (jurisdiction may not be avoided merely because the defendant did not *physically* enter the forum state). For the reasons stated above, S & G's Motion to Dismiss for Lack of Personal Jurisdiction is denied.

## II. Motion to Transfer Venue

As an alternative to their Motion to Dismiss, S & G asserts that the instant action should be transferred under 28 U.S.C. § 1404(a) to the Northern District of Texas-Dallas Division. Section 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. Buehler does not dispute that the Northern District of Texas qualifies

as a district where this action may have been brought. *See* Pl. Resp. Br. [D.E. 28] at 10 ("Mr. Buehler agrees with [S & G] that Dallas County, Texas is also a proper forum for this lawsuit . . . ."). Therefore, the question before the Court is whether transferring this case would increase the convenience of the parties and witnesses and advance the interests of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

**A. Convenience of the Parties and Witnesses**

In determining whether this case should be transferred for the convenience of the parties and witnesses, this Court should consider "the relative ease of access to sources of proof; availability of compulsory process for attendance of willing witnesses; possibility of view of premises if such would be appropriate; and all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Peterson v. Union Pacific Railroad* Co., 04 C 5918, 04 C 5949, 04 C 6032, 05 C 6263, 2006 WL 1049715, at *1 (N.D. Ill. April 19, 2006) (*citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), *superceded by statute on other grounds as recognized in Heriot v. Byrne*, 08 C 2272, 2008 WL 4874297, at *4 (N.D. Ill. July 21, 2008)). This Court is vested with a great deal of discretion in weighing these factors, and the decision to transfer must be made on a case-by-case basis. *See Coffey*, 796 F.2d at 219. The Court, however, may not transfer a case for the convenience of one party's witnesses at the expense of the other party's witnesses. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). The plaintiff's choice of forum is rarely disturbed unless the balance is strongly in favor of the defendant. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664-65 (7th Cir. 2003).

Courts generally assume that a party will testify voluntarily at trial; however, issues related to non-party witnesses implicate aspects of each of the § 1404(a) factors. *See FUL Inc. v. Unified*

8

*Sch. Dist. No. 204*, 839 F.Supp. 1307, 1311-12 (N.D. Ill. 1993). The cost of obtaining attendance of willing witnesses involves the convenience of the parties; the need for such witnesses to travel to the courthouse to testify relates to the convenience of the witnesses; and finally, the availability of the compulsory process for attendance of unwilling witnesses speaks to the interest in justice. *See Petersen*, 2006 WL 1049715, at *3. In evaluating the availability of witnesses, this Court should consider not only the quantity of witnesses in each forum but also the nature and relevance of their testimony. *See Howell v. Jofe*, 478 F.Supp.2d 1014, 1023 (N.D. Ill. 2006); *FUL*, 839 F.Supp. at 1311.

Here, the Northern District of Texas-Dallas Division is much more convenient for witnesses central to this case. In fact, all of the non-party witnesses identified by the parties are located in Dallas, Texas. These witnesses include: 1) Gary Buehler, one of the principals of S & G who signed the Demand Note that forms the basis of this action; 2) Michelle Buehler, Gary's wife, who worked as Gary's bookkeeper and will likely possess information concerning the circumstances under which the Note was executed and whether funds were actually received by S & G pursuant to the Note; 3) Kandy Robertson, a former bookkeeper for Gary, who has previously given deposition testimony in a related case currently pending in Texas involving Servin, Gary, and the Note; 4) Gloria Hammond, a Texas attorney who formerly handled the corporate books for S & G, including the issuance of stock certificates for S & G, whose testimony is relevant because there is a disagreement among the parties as to whether the Note at issue in the case was a loan or issued for the purchase of stock in S & G; 5) Ken Biermacher, a Texas attorney, who handled Gary's efforts to consolidate power in the various entities he owned with Servin; 6) Paul Pearce, a CPA and the former bookkeeper for S & G, who possesses information relating to the tax and accounting treatment of

9

the $100,000 at issue in the Demand Note, whose testimony is relevant because S & G disputes issues surrounding its receipt of the money; 7) the Dallas branch of Chase Bank where Gary and S & G maintain accounts, 8) Jami Goetze; and 9) Laurel Thomaschaske, both of whom have knowledge relating to Gary's alleged breach of fiduciary duty and fraudulent conduct associated with his position at S & G and other business entities that he and Servin were involved in together, all of which are the subject of currently pending Texas litigation.

S & G submitted Servin's affidavit to represent that the these witnesses have knowledge concerning the execution of the Demand Note, whether Gary ever tendered the $100,000 to S & G, whether the money was issued to Gary on behalf of S & G as a loan or for the purchase of shares in S & G, and whether the Note is a "sham." *See* Servin Dec, Ex. A to Mtn. To Transfer. S & G also represents that all of these witness, with the exception of Jami Goetze and Laurel Thomaschaske, will likely need to be subpoenaed for their testimony. *See id*. All of this proffered testimony, particularly Gary Buehlers, should be central to accurately deciding a case in which S & G asserts that the transaction at issue was not a legitimate transaction between a lender and a corporate borrower and where the facts surrounding the execution of the Note are in dispute, and in addition to this forum being inconvenient for these witnesses, the witnesses are outside of the subpoena power of this Court. The Court's concern is that important non-party witnesses may be unavailable to testify at trial due to cost or inconvenience, thereby resulting in trial by deposition. *See Bally Mfg. Corp. v. Kane*, 698 F. Supp. 734, 738 (N.D. Ill. 1988) ("The live testimony of material non-party witnesses is preferred."). While this Court is not willing merely to shift the inconvenience from S & G to Buehler, the convenience of these non-party witnesses and their potential unavailability is a significant factor weighing in favor of transfer. *See Dairy Indus. Supply*

*Ass'n v. LaBuy*, 207 F.2d 554, 558 (7th Cir. 1953) (holding transfer must increase convenience not merely shift the inconvenience to the plaintiffs or their witnesses). In reaching this conclusion, the Court is not only considering the quantity of witnesses located in Texas, but also the nature of their testimony. *See FUL*, 839 F.Supp. at 1311. Therefore, the Court finds that Texas is a more convenient forum and perhaps more importantly, one that provides compulsory process for the witnesses in this case.

**B. The Interests of Justice**

The interests of justice component of § 1404(a) focuses on the efficient and fair administration of the courts rather than on the interests of the litigants themselves. *See Coffey*, 796 F.2d 217, 220 (7th Cir. 1986). In making a determination under this component, this Court should consider the relative speed with which the case will go to trial, the familiarity of the judge with the applicable law, the relationship of the parties and claims to the forum, and access to sources of proof. *See Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, No. 06 C 3183, 2007 WL 1560212, at *6 (N.D. Ill. May 29, 2007) (*citing Heller*, 883 F.2d at 1293).

First, there is no substantial difference in the efficiencies of the two courts. Two statistics bear significant relevance when analyzing the likelihood of a speedy trial. *See Tingstol v. Co. v. Rainbow Sales, Inc.*, 18 F.Supp.2d 930, 934 (N.D. Ill. 1998). The first is the median number of months from filing to disposition, and the second is the median number of months from filing to trial. *See id*. According to the 2008 Federal Court Management Statistics, the median number of months from filing to disposition of a civil case in the Northern District of Illinois is 6.2 months, whereas the Northern District of Texas disposes of civil actions in a median 7.4 months. Def's Mem. Supp. Mtn. To Transfer Venue, Ex. B. Similarly, the median number of months between

11

filing a civil action and going to trial in the Northern District of Illinois is 27.5 months, whereas the filing to trial time for a civil action in the Northern District of Texas is 24.1 months. *See id*. Therefore, the likelihood of a speedy trial factor does not favor either forum; however, the other factors to be considered weigh in favor of transfer. Again, compulsory process would be unavailable for S & G's witnesses in Texas because the Court does not have subpoena power over them. Therefore, it could not require that the witnesses appear at trial which could result in a "trial by deposition" without major witnesses appearing to testify, which is greatly disfavored. *See Petersen*, 2006 WL 1049715, at *3 (*citing Bally Mfg.*, 698 F.Supp. at 738). Additionally, S & G represents that these third party witnesses possess documents that will likely need to be obtained pursuant to a subpoena. Lastly, the Demand Note at issue specifically states that the Note is to be "enforced in accordance with the laws of the State of Texas." *See* Amend. Comp. Ex A. While the Court recognizes that contract law is not particularly complex, a Texas judge is still likely to be more familiar with Texas law. Therefore, the "interest of justice" component reinforces the Court's judgment that this matter should be transferred to the Northern District of Texas-Dallas Division.

## CONCLUSION AND ORDER

For the reasons stated, S & G's Motion to Dismiss is denied and its Motion to Transfer to the Northern District of Texas is granted. Accordingly, this case is ordered transferred to the Northern District of Texas-Dallas Division for all further proceedings.

So ordered.

_____
Virginia M. Kendall
United States District Judge
Northern District of Illinois

Date: June 2, 2009